MARY K. YOST ET AL. v. A. ALDERSON.

1. CHANCERY PRACTICE. *Setting aside order pro confesso. Case in judgment.*
A. was summoned to answer a bill filed by Y., "at a chancery court to be holden on the second Monday of July, 1878." That day was a rule day, the

regular term commencing on the 9th of the ensuing September. On the second Monday of August the complainant took an order *pro confesso*, the defendant having failed to answer. On the next day the defendant's solicitor went to the clerk's office to get the bill, in order to answer it, but the office was closed. On the day next after this he got into the clerk's office, discovered the order *pro confesso*, and thereupon went to the complainant's solicitor and asked him to set it aside, promising to answer on that day. This request was refused, and on Friday of the same week the defendant made a motion to set aside the order and for leave to file his answer. In support of this motion he filed his answer, containing a full denial of the equities of the bill, and also an affidavit to the effect that when the summons was served he had just returned from an absence of six months, and was much engaged with business which had accumulated during his absence; that he was then much excited, in common with the rest of the community, by news of yellow fever in New Orleans, and fears that it would reach Jackson; and that, owing to these causes and the fact that the summons required him to appear at a term of the court, and not at a rule-day, he did not observe that the day for appearance was a rule-day, instead of the day of the commencement of the next term, and in this way neglected to answer before the order *pro confesso* was taken. The chancellor sustained the motion. *Held,* that his action was correct.

2. SAME.  *Neglect in conduct of suit.  How treated.*

Where a party neglects, in the mere conduct of a suit, to conform to the statutory rules of procedure, and the consequences of his omission do not operate injuriously against others, he should not on that account alone be deprived of the means and opportunity of maintaining or defending his rights. The condonation of such neglect by the judge, in the exercise of his lawful discretion, can do no harm except to deprive the adverse party of an advantage which he has secured through that neglect. The object of the institution of courts is to administer justice according to law, and lawsuits are for that purpose alone. Rules of procedure regulating the conduct of business in courts are intended solely to facilitate the ends of legal justice. They are necessary, and their due observance should be enforced; but when the non-observance is in a trivial matter, working no injury to the adverse party, and not materially impeding the due progress of the cause, the fault should be corrected and the authority of the court maintained rather by the imposition of costs and the use of other disciplinary agencies than by depriving the party in fault of the opportunity of a fair trial.

3. DEED.  *Attacked as not having been executed.  Effect of acknowledgment. Case in judgment.*

A bill was filed by Y. to have declared void a deed purporting to have been executed by herself and her husband, deceased, upon the ground that she never executed it, and that the property therein described was the homestead of herself and minor children. The defendant answered, denying the equities of the bill. The complainant and her daughter testified that the former refused, in the presence of the justice of the peace who certified to the acknowledgment, to sign the deed or to acknowledge it. The defendant

established the facts that the justice of the peace who certified the acknowledgment was a man of high character and well acquainted with his official business; that Y.'s husband paid rent for the property conveyed, during his lifetime, after the conveyance, and she knew of this; and that after his death she paid rent for the same premises for a short time, and then voluntarily surrendered them to the defendant. The bill was not filed till after the death of Y.'s husband and of the justice of the peace. The Chancery Court dismissed the bill. *Held*, that the action of the court below was well warranted by the proof.

Appeal from the Chancery Court of Hinds County.

Hon. E. G. Peyton, Chancellor.

The case is sufficiently stated in the opinion of the court.

*Shelton & Shelton*, for the appellants.

1. It is settled, under the statutes of this State, that the granting or refusing of a motion to set aside a decree *pro confesso* is a matter within the sound discretion of the court. This is a sound judicial discretion; the court cannot act arbitrarily. *Pittman* v. *McClellan*, 55 Miss. 299 ; *Kelly* v. *Brooks*, 57 Miss. 227 ; *Rankin County Savings Inst.* v. *Gunn*, MS. opinion, book J, p. 74. Sect. 1021 of the Code of 1871 is imperative that " no *pro·confesso* decree so taken shall be set aside without good cause shown, by affidavit," etc.

It is apparent from the affidavit filed in support of the motion that the appellee either intentionally or forgetfully neglected to attend to this case, without even a plausible excuse therefor. Forgetfulness or neglect has been held to be no excuse ; and certainly it is not such " good cause " as is required by the statute. *Rankin County Savings Inst.* v. *Gunn, supra*. The appellants acquired a legal advantage fairly, and the court had no right to deprive them of it on the flimsy excuse made by the appellee.

But if the affidavit was a sufficient showing why the answer was not filed, the answer contained no meritorious defence, but consisted entirely of wholesale denials by reckless swearing, without the defendant having any knowledge or information as to the material allegations denied. Such denials are not the meritorious defence that is required.

Upon the whole, we submit that the action of the court in ·setting aside the decree *pro confesso* was an abuse of its discretion, as "good cause" for such action was not shown.

2. We insist that, on the facts of the case, the pretended ·deed to the appellee must be held to be invalid, because (1) Mrs. Yost testifies positively and unequivocally that ·she never did execute that deed; (2) Miss Matilda Yost testifies with equal clearness that on the several occasions on which her mother was asked to execute it, she positively refused; (3) they both testify that they never knew or heard ·of appellee claiming under a deed purporting to have been signed by Mrs. Yost, until January, 1878, *and this was after Boyd's death,* when she, with astonishment, denied that she had ever done any such thing, and proceeded very promptly to consult counsel and institute this suit to enforce her rights (in this she is fully corroborated by Chiles, the person who first informed her of the pretended deed); (4) the fact that the appellee, knowing the precariousness of his pretended title, has attempted to fortify it by bringing up a tax-title; (5) the rascally attempt of the appellee to induce her, after the commencement of this suit, to sign some contract or agreement prejudicial to her rights in this cause, and which he refuses to let either her daughter or her attorney in this cause read; and (6) that in the whole record there is not a particle of evidence, save the certificate of acknowledgment, contradicting the positive statements of both Mrs. Yost and her daughter.

*James Shelton,* of counsel for the appellants, argued the ·case orally.

*T. J. & F. A. R. Wharton,* for the appellee.

1. We insist that an application to set aside a decree *pro confesso* is a matter submitted to the enlightened discretion of the court, to be exercised in view of the special circumstances of the case, regard being had to the reasons assigned in the affidavit in support of the motion why the proper pleading was not filed, and also to the character of the defence set up in the answer presented with the motion.

In *Pattison* v. *Josselyn*, 43 Miss. 373, it was held that the Chancery Court has the discretion, at the same term at which a final decree is pronounced, for good cause, to alter, modify, or set it aside, and that this discretion continues on interlocutory orders, so long as the cause is in progress, no matter at what term they may have been rendered, and does not cease till the case terminates in a final decree. See also *Kelly* v. *Brooks*, 57 Miss. 225. But such discretion is not arbitrary or capricious, but regulated by the practice of the court. It was also held in *Pattison* v. *Josselyn* that, ordinarily, whatever was in the discretion of the Chancery Court — as are many things in the progress of a cause—cannot be assigned for error. In *Pittman* v. *McClellan*, 55 Miss. 304, this court said the practice which prevailed in the English Chancery Court, and very generally in this country, is to take off the default and open the *pro confesso* on terms. It is a matter of sound discretion to reverse or not, according to circumstances. These terms are that the defendant shall pay costs occasioned by his default and incident to the relief, and present his answer, so that the court may judge of it.

The Chancery Court considered that "good cause" was shown why the answer was not filed on the return-day of the summons. And we submit that the defence set out in the answer is a most equitable and conclusive one. For these reasons the decree *pro confesso* was properly set aside.

2. The deed in question was executed in strict accordance with the statute relating to the conveyance of homesteads Code 1871, sect. 2143; Acts 1873, p. 78. The certificate of acknowledgment, being in the form required in such cases, estops Mrs. Yost, as a matter of law, from denying the validity of the deed, except by affirmative proof that such certificate was false or procured by fraud, and that appellee had notice of this before he accepted the deed and paid the purchase-money. *Johnston* v. *Wallace*, 53 Miss. 331. We invite special attention to the entire opinion in that case, as the court reviews its previous decisions, particularly in *Stone* v.

*Montgomery*, 35 Miss. 83, and *Allen* v. *Lenoir*, 53 Miss. 321.

If the appellee was induced by any act or statement on the part of Mrs. Yost to accept the deed and pay the purchase-money, she will be estopped from denying or controverting such act or statement. *Staton* v. *Bryant*, 55 Miss. 261 ; *Davis* v. *Bowmar*, 55 Miss. 671.

If mistaken in the position that the appellants are estopped as a matter of law, we insist that they are barred of the relief prayed by the statement in the certificate of acknowledgment, treating the certificate only as the evidence of a disinterested witness of the facts therein recited. *Lockhart* v. *Cornfield*, 48 Miss. 489 ; *Johnston* v. *Wallace*, 53 Miss. 331 ; 1 Greenl. on Ev., sect. 15. That certificate, made by a sworn officer in the discharge of official duties, and in due form of law, stands as his deposition — as though he had been examined and cross-examined as to the facts therein stated. *Kennedy* v. *Prior*, 57 Miss. 774 ; *Harmon* v. *Magee*, 57 Miss. 415.

*T. J. Wharton*, of counsel for the appellee, argued the case orally.

GEORGE, J., delivered the opinion of the court.

The bill of complaint in this cause was filed in the Chancery Court to annul or have declared void a deed purporting to have been made by one of the appellants, Mary K. Yost, and her husband, on the 9th of May, 1876. The deed on its face appears to have been executed by her, with her mark, and the execution of it is attested by John H. Boyd, who also on the date of the deed, as a justice of the peace, certified regularly to an acknowledgment of it by both the husband and wife. The bill charges that the appellant never executed the deed and never acknowledged it, and on this ground relief is prayed.

The bill was filed in March, 1878, and, the first summons on the bill being returned not found, an *alias* summons was issued and duly served on the appellee on the 24th of June follow-

ing. The summons required the appearance of the defendant " at a chancery court to be holden at the court-room thereof, in the city of Jackson, on the second Monday of July, 1878," which was a rule-day of the court, the regular term of the court commencing on the 9th of the ensuing September. On the second Monday of August the complainant took a *pro confesso* on the bill, the defendant having failed to answer. On the next day the solicitor of the defendant went to the clerk's office to get the bill, in order to answer it, and, the office being closed, could not gain admittance. On the next day after this he succeeded in getting into the office, and found that a *pro confesso* had been entered, and thereupon went to complainant's solicitor and asked that it be set aside, promising to file the answer that day. This request was refused, and on Friday of the same week the defendant made a motion to set aside the *pro confesso* decree and for leave to file his answer. In support of this motion he filed his answer, which contained a full denial of all the equities of the bill ; and he also filed an affidavit, from which it appeared that when the summons was served on the defendant he had just returned from an absence of six months, and was then much engaged in business which had accumulated during his absence, and that he was much excited, in common with the rest of the community, by news of yellow fever in New Orleans and by fears that it would reach Jackson ; that, owing to these causes, and the fact that the summons required him to appear at a term of the Chancery Court, and not at a rule-day, he did not observe that the day of appearance was a rule-day, and not the day for the commencement of the next term of the court; and in this way he neglected to put in his answer before the *pro confesso* decree was entered.

The chancellor sustained the motion and allowed the defendant to file his answer. And this is the first error complained of.

We do not doubt that this action of the chancellor was entirely correct. The filing of the answer occasioned no delay

in the trial of the cause, and the application to file it was made so soon after the *pro confesso* decree was entered that it is impossible to conceive that the complainant had omitted to take any steps to procure testimony or secure her rights, upon the faith that the bill would not be defended. The statute (Code 1871, sect. 1021) declares that a "*pro confesso* so taken shall not be set aside without good cause shown, supported by affidavit." It is argued that the cause shown was not good and sufficient; that mere inattention and forgetfulness cannot be a valid excuse for a failure to discharge a legal duty. This may be true when such inattention or forgetfulness has occasioned a failure which has been injurious to the adverse party, or the action of that party, based on such failure and caused by it, cannot be reversed without injury to him. But when the neglect is in the mere conduct of a suit, and its consequences do not operate injuriously, its condonation by the judge can do no harm except to deprive the adverse party of an advantage which he has secured in virtue of such neglect, and in that case the party guilty of the neglect should not on that account alone be deprived of the means and opportunity of maintaining or defending his rights. The object of the institution of courts is to administer justice according to law, and lawsuits are allowed for that purpose alone. Rules of procedure regulating the conducting of business in courts are instituted solely to facilitate these ends. They are necessary, and their due observance should be enforced by the courts. But it should not be forgotten that they are aids to secure the administering of justice, not shackles to bind courts to the perpetration of wrong. When their nonobservance is in a trivial matter, working no injury to the adverse party and not materially impeding the due progress of the cause, the fault should be corrected, and the authority of the court maintained rather by the imposition of costs and the use of other disciplinary agencies than by depriving parties of the opportunity of a fair trial, to secure which such rules are instituted.

It is true that diligence is to be encouraged and the want of it discountenanced, but these ends should never be attained by transferring to one suitor the estate of another, if there be other means of securing them. Nor should a lawsuit be allowed to become a mere game of skill and address, to secure to the successful litigant the fruits of his superior management.

The decree of the chancellor dismissing the bill was correct on the merits of the case. It is true the complainant and her daughter testified that the complainant refused, in the presence of the justice of the peace, to execute the deed or acknowledge it. In opposition to this positive testimony are the facts, fully established, that the justice of the peace who attested the deed and certified to the acknowledgment was a man of high character and well acquainted with his official business, and that Yost, the husband, paid rent for the property conveyed in the deed, during his lifetime; that Mrs. Yost knew of this, and after her husband's death she paid rent for the same premises for a short time, and then voluntarily surrendered them to the appellee. It is also to be noted as a significant circumstance that the bill was not filed till after the death of the justice of the peace and of the husband. Under all the circumstances, the chancellor was well warranted in finding that the deed had been duly executed by the appellant.

Decree affirmed.