Jerry HAMBURGER, Arlie Hamburger and Rex Gilworth, Plaintiffs in Error,

v.

L. A. FRY, Defendant in Error.

No. 37964.

Supreme Court of Oklahoma.

Dec. 2, 1958.

Rehearing Denied May 5, 1959.

Percy Hughes, Hobart, Sid White, Oklahoma City, for plaintiffs in error.

Arney & Barker, Clinton, for defendant in error.

BLACKBIRD, Justice.

This appeal involves judgment vacation proceedings. The judgment was obtained by defendant in error, as plaintiff, against plaintiffs in error, as defendants, in the sum of $3,419.20. This was the sum alleged, in plaintiff's petition filed in August, 1956, to be due him, as a wholesale gasoline and oil dealer, for gas and oil he sold them for resale in a business said to be owned and operated by defendants, in Weatherford, Oklahoma, as "Hamburger Service." Our continued reference to the parties will be by their original trial court designations.

After being served with summons, defendants went to Cordell, Oklahoma, employed W, an attorney of that city, to represent them in the case and paid part, and made satisfactory arrangements to pay the balance, of said attorney's fee. The last pleading W filed for defendants in the case was a demurrer which, on November 19, 1956, the court overruled and allowed defendants 20 days within which to answer. Thereafter, on December 17th, the case was set for hearing on January 7, 1957, and one of plaintiff's attorneys wrote W a letter to notify him of that fact. On the latter date, attorney W did not appear in court and the cause was continued until January 21, 1957, on which date neither W, nor either of the defendants, was present; and no answer ever having been filed, default judgment was entered against them in plaintiff's favor for the aforesaid amount.

The defendants did not know of the judgment until the latter part of January, or the 1st part of February, when an acquaintance, who had read of it in a newspaper, told them. Thereupon, after verifying this information, defendants went to Cordell in an effort to contact attorney W. When they arrived at his office, he was out of town and his telephone had been disconnected. After numerous efforts to locate him, defendants finally learned that he had moved to Oklahoma City. After said attorney W had made them several promises to return from that city and see about the matter, but failed to keep them, defendants employed their present attorney H to take the necessary steps to obtain relief from said default judgment and to defend them in the action. Pursuant to this employment, H, on February 28, 1957, filed on defendants' behalf, a motion to vacate the aforesaid default judgment, alleging some of the facts hereinbefore related, and others, and further alleging that attorney W had abandoned the case, and that, under the circumstances, defendants were prevented from having a fair trial on account of what amounted to unavoidable casualty. In said motion, defendants also alleged facts contemplated to show that they had a good and valid defense to the action.

Before plaintiff had joined the issues in the judgment vacation proceedings by filing an answer to defendants' motion to vacate, his attorney, on March 28, 1957, wrote attorney W concerning the matter. In his

letter, dated April 3, 1957, answering said letter, W admitted that he was originally employed to defend the case, and, among other things, stated:

"During the month of January and February I was on business for some clients here in Oklahoma City and allowed my answer date to run over, which was my own fault. A default judgment was taken in the case as a consequence. I kept thinking every week end I would be back in my office and file the motion myself; however, I have been employed steadily since that time and have now moved to Oklahoma City."

In addition to the foregoing facts, either stipulated or proved, at the hearing held in the judgment vacation proceedings, defendants' present attorney, H, testified that on April 3, 1957, he received a copy of W's above-quoted letter to plaintiff's attorneys, and that on the bottom of said copy, W wrote a note asking H to represent defendants, for which he sent H $50, and promised that, before the end of the month, he would send H an additional $200. H further testified, however, that he never received the latter promised payment.

After hearing the evidence, the court entered the judgment, from which defendants herein appeal, overruling their motion to vacate, after finding, inter alia, that attorney W, at the time the previous default judgment was entered, had never abandoned the cause and that said attorney's negligence "is, and rightfully should be, charged as the negligence of the defendants themselves."

In their arguments in this appeal, plaintiff and defendants rely upon different lines of cases. Those urged by plaintiff have held that, in view of the rule of agency that the negligence of an agent is the negligence of his principal, the negligence of lawyers in allowing default judgments to be entered against their clients "is not unavoidable casualty or misfortune within the meaning of subd. 7, § 810, C.O.S. 1921 (Tit. 12 O.S.1951 § 1031, subd. 7)" Gavin v. Heath, 125 Okl. 118, 256 P. 745. The prac-

tice of attributing attorneys' negligence to their clients in such matters is not of uniform and universal application in cases where, under the circumstances, the clients neither knew, nor should have known, of the attorney's negligence in time to employ other counsel, or otherwise protect themselves against the consequences thereof, and have not been guilty of *actual, as distinguished from imputed,* negligence (see McDaniel v. Hoblit, 34 Wyo. 509, 245 P. 295, 296, 297; 31 Am.Jur., "Judgments", sec. 748); and the courts have found ways and means of relieving such clients from harsh and inequitable results that can follow the indiscriminate application of such a rule of principal-agent responsibility, particularly in those cases where prompt action has been taken, after the default judgment was entered, to vacate or set it aside. See, for instance, Citizens Nat. Bank of Sisseton, S. D., v. Branden, 19 N.D. 489, 126 N.W. 102, 27 L.R.A.,N.S., 858, and various cases cited in the note thereto; O'Brien v. Leach, 139 Cal. 220, 72 P. 1004, 96 Am.St. Rep. 105; Peterson v. Koch, 110 Iowa 19, 81 N.W. 160, 80 Am.St.Rep. 261, and cases cited in the note thereto; Southwestern Surety Ins. Co. v. Treadway, 113 Miss. 189, 74 So. 143; Yost v. Alderson, 58 Miss. 40. This court has done the same thing. See Cox v. Williams, Okl., 275 P.2d 248, and Shuler v. Viger, 103 Okl. 129, 229 P. 280. In Grayson v. Stith, 196 Okl. 477, 165 P.2d 984, the attorney's actions, as far as concerned their consequences, the attorney's attention to his client's business, and the discharge of the duties of his position, was little different from those of the Cordell attorney involved here. There, after recognizing that the negligence of an attorney is, under Gavin v. Heath, supra, and other cases, imputable to his client, we held the client's judgment vacation proceedings maintainable on the statutory ground of "unavoidable casualty or misfortune", apparently on the theory that the attorney had abandoned the case.

In view of the aforementioned findings, it contained, with reference to W's nonabandonment and defendants' negligence,

the journal entry of judgment in the present case appears to be a studied effort to bring it within the operation of the rule of client responsibility followed in such cases as Gavin v. Heath, supra, and to prevent application of Grayson v. Stith, supra. Faced with these formidable obstacles to reversal, defendants urge that, instead of following the line of cases advanced by plaintiff and exemplified by Gavin v. Heath, supra, we apply herein the principles applied in Latson v. Eaton, Okl., 311 P.2d 231; Boehs v. Manning, Okl., 308 P.2d 288; and Gulf, C. & S. F. Ry. Co. v. Kellum, Okl., 261 P. 2d 610.

Initially, neither side appears to have recognized, and only in their final arguments have defendants pointed out, that rather than being conflicting, the two above mentioned lines of cases respectively relied upon, have involved different types of judgment vacation proceedings. The principles enumerated in the last cited opinions have been applied solely to those cases in which the judgment vacation proceedings were instituted *within the same term* of court in which the default judgments involved were entered. The point to be emphasized and which this court may not always have previously made clear, is that at such time, neither the trial court's power nor the litigant's right (if it may be referred to as such) depends upon proof that he is the victim of "unavoidable casualty or misfortune" within the recognized meaning of that term as used in sec. 1031, subd. 7, supra. As said in Halliburton v. Illinois Life Ins. Co., 170 Okl. 360, 40 P.2d 1086, 1088, and pointed out in the quotation from Morgan v. Phillips Petroleum Co., 202 Okl. 181, 212 P.2d 663, and other cases:

"The power of the trial court to act on such a motion was not dependent on statutory grounds, but, on the contrary, involved the power of a court to control its judgment during term."

See also Davidson v. Pickens, Okl., 261 P.2d 872. In the early Kansas case of Welch v. Challen, 31 Kan. 696, 3 P. 314, 319, which was discussed and followed in Gavin v.

Heath, supra, the court seems to have recognized this, when it said: "* * * where a party moves to set aside a judgment immediately after its rendition, and at the same term at which it was rendered, it may be set aside for irregularities that would not authorize its being set aside if the application were made at some subsequent term." Because neither of the cited cases involved motions to vacate that were filed during the same term the default judgments were rendered, they are not "on all fours" with the present case. Though there is perhaps logical ground for the conclusion that originally, references to judgment vacations sought during the same term as the judgment, as being "within the sound discretion" of the trial court, were intended to convey the idea that they were matters of grace rather than of right, and, under some special statutes pertaining to default judgments, it appears that the matter is not governed altogether by whether the trial court's discretion has been soundly exercised (Citizens Nat. Bank of Sisseton, S. D. v. Branden, supra), in this jurisdiction, it is an abuse of discretion to deny such a motion when all of the circumstances demonstrate that said motion could well be granted without serious injustice, and the denial of the motion may result in serious injustice. Latson v. Eaton, supra. This rule, in accord with decisions of other courts (see Morrell v. Morrell, 149 Okl. 187, 299 P. 866, 868, quoting from Nash v. Treat, 45 Mont. 250, 122 P. 745, Ann.Cas.1913E, 751), gives the movant, who appears to be without actual fault in the matter and who moves to vacate promptly, "the benefit of the doubt", to the end that he shall have his day in court. In the present case, it appears that defendants' nearest approach to actual fault, neglect, or responsibility for the rendition of the default judgment against them was their reliance on attorney W, which was their rightful prerogative. Promptly after ascertaining what had occurred, without any previous warning or actual notice to them, they filed their motion to vacate the default judgment soon after, and within the same term in which,

it was entered; and there is no claim, nor court finding, to the contrary.

Plaintiff says, however, that only one of the three defendants is financially responsible or owns property against which execution of the present judgment can be levied, and if said judgment is vacated, said property may be disposed of before the case can be tried and a new judgment entered, thus depriving plaintiff of any certain method by which he can enforce or collect said judgment, and by reason of which, he may thus suffer an injustice. Plaintiff's argument is that these circumstances (incidentally not shown by the record) render the last mentioned rule inapplicable to this case. It is doubtful that the "injustice" referred to in the rule relates any more to the collectibility of the judgment (after it is obtained) than it does to the attorney's insolvency in the operation of the rule followed in Gavin v. Heath, supra. In this connection, see Welch v. Challen, supra, but also notice Waterson v. Seat, 10 Fla. 326, discussed in the note beginning at 27 L.R.A.,N.S., 858. However, under the trial court's power, upon sustaining such motions, to adopt proper measures to protect rights acquired under the previous judgment (see the authorities cited in Halliburton v. Illinois Life Ins. Co., supra) this argument presents no tenable reason for overruling them. In Yost v. Alderson, supra, where no effort was made to file the defendant's answer until after the date specified in the summons served upon him, the court said:

"* * * when the neglect is in the mere conduct of a suit, and its consequences do not operate injuriously, its condonation by the judge can do no harm except to deprive the adverse party of an advantage which he has secured in virtue of such neglect, and in that case the party guilty of the neglect should not on that account alone be deprived of the means and opportunity of maintaining or defending his rights. The object of the institution of courts is to administer justice according to law, and lawsuits are allowed for that purpose alone. Rules of procedure regulating the conducting of business in courts are instituted solely to facilitate these ends. They are necessary, and their due observance should be enforced by the courts. But it should not be forgotten that they are aids to secure the administering of justice, not shackles to bind courts to the perpetration of wrong. * * *"

In view of the foregoing, we conclude that the trial court erred in viewing the evidence solely in the light of Gavin v. Heath and Grayson v. Stith, supra. As defendants' motion to vacate was filed within the term in which the default judgment was entered against them, said court should have been controlled by defendants' freedom from actual fault and the additional factors that were taken into consideration in the line of cases exemplified by Gulf, C. & S. F. Ry. Co. v. Kellum, supra.

The trial court's order and judgment overruling defendant's motion to vacate the default judgment is hereby reversed, and the cause is remanded to the trial court with instructions to vacate the default judgment rendered January 21, 1957, for $3,419.20, but upon condition that the defendants and each of them stipulate that when and if the plaintiff shall recover judgment for said sum or any part thereof on the cause of action involved, such judgment whenever rendered shall, to the extent of such recovery, constitute a lien on the real estate of the defendants from and after January 21, 1957, to the same legal extent that the original default judgment became a lien on real estate when it was rendered, and that such stipulated provision shall be incorporated in the trial court's order vacating the judgment heretofore rendered on January 21, 1957, as aforesaid.

JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.

WELCH, C. J., concurs in result.

HALLEY, J., CORN, V. C. J., and DAVISON, J., dissent.

HALLEY, Justice (dissenting).

I dissent in this case because I think the majority opinion rewards carelessness and negligence on the part of a lawyer appearing for the defendants, however, not counsel on this appeal. The record in this case discloses that each of the defendants was properly served with a summons in this case. On the 26th of September, 1956, they filed jointly a special appearance and motion to quash summons. On November 2, 1956, they filed a joint demurrer. The Journal Entry of Judgment shows that the demurrer was abandoned on November 19, 1956, and the defendants were given twenty days to answer. On the 17th of December 1956, the matter was set for trial on January 7, 1957. The defendants failed to appear either in person or by counsel. Counsel for plaintiff notified counsel for defendants of the setting of the case for January 7, 1957. No appearance was made on that date so the matter was continued to January 21, 1957, and placed on the regular motion docket. Again defendants failed to appear either in person or by counsel. A default judgment was entered against the defendants.

On February 28, 1957, the defendants filed a motion to vacate the judgment. On June 17, 1957, a hearing was had on the motion to vacate judgment. Testimony was offered and the trial judge refused to vacate the judgment. Two of the defendants testified. In my opinion the evidence offered failed to prove that the defendants had a defense to plaintiff's suit. No evidence of payment was furnished.

There was no unavoidable casualty or misfortune in this case. It was simply a case of plain carelessness on the part of counsel and no doubt a feeling on his part that there was no defense to the case of plaintiff.

The rule in Gulf, C. & S. F. Ry. Co. v. Kellum, Okl., 261 P.2d 610 and similar cases, is not applicable in this case because of the difference in the facts involved in this case and those cases. There is the additional reason that the possibility of collecting under a new judgment for the plaintiff would be greatly imperiled. Slothfulness should not be rewarded.

If original counsel for defendants was guilty of malpractice there lies the defendants' remedy and not by vacating the judgment.

I dissent.

WILLIAMS, Vice Chief Justice.

### Supplemental Opinion on Petition for Rehearing

One of defendants in trial court in his "Petition for Rehearing and Application to Modify Opinion by Plaintiff in Error Arlie Hamburger," states in effect that this court has by the opinion now extant in this case charged his property with a lien, giving "to the defendant all the advantages of an attachment", etc. In supplement thereto he argues that we have overlooked 12 O.S. 1957 Supp. § 706.2 (of provision that a judgment debtor may deposit a sufficient amount of cash with the court clerk pending an appeal and discharge the lien of judgment and any attachment). Here the appeal is from a judgment refusing to vacate a previous judgment. In view of our further holding herein we do not find it necessary to pass upon the applicability of the cited statute to this precise situation.

Said defendant in his "Response of Plaintiff in Error to Petition for Rehearing of Defendant in Error" states, "Plaintiff in error agrees that a reversal of the judgment without more frees his real estate from the lien of said judgment but proposes to give an undertaking to be approved by the clerk of the court in an amount sufficient to fully protect defendant in error as a guarantee of good faith and an assurance that any judgment Fry can secure will be paid."

Defendant in error urges that we vacate our opinion which is supplemented hereby and affirm the action of the trial court in refusing to vacate the default judgment of which plaintiffs in error, defendants below, complain.

Our statute, 12 O.S.1951 § 1036, after referring to vacation and modification of judgments, provides in part as follows:

"On the granting of any such order, the court, or judge, may require the party obtaining any such order to enter into an undertaking to the adverse party to pay all damages that may be caused by granting of the same."

In the case of Halliburton v. Illinois Life Ins. Co., 170 Okl. 360, 40 P.2d 1086, 1089, we quoted the foregoing statute (then cited as O.S.1931 § 561) and then said:

" * * * While the proceeding before us concerns the power of a court to vacate a judgment pursuant to a motion filed within term and is therefore not dependent upon the above statute, the statute quoted is declarative of the public policy of this state and provides one of the methods by which the judgment creditor may be protected.

"Similarly this court in the case of Pettis v. Johnston, 78 Okl. 277, 190 P. 681, 682, said in syllabus 15: 'A court of equity may impose such conditions to the granting of relief against a judgment not void on its face as appear equitable under the circumstances of each particular case, and also as provided for by section 5272, Rev. Laws 1910. (See paragraph 5, opinion.)'

"Thus the policy of protecting judgment creditors by imposing conditions in proper cases, when a default judgment is opened or vacated, has received both legislative and judicial approval in this jurisdiction.

"* * * the court may require, as a condition to vacating the judgment, a bond to secure the payment of the amount of any future judgment which plaintiffs may obtain, said bond not to exceed in amount the value of the lands upon which plaintiff's judgment attached as a lien, and upon which execution has been heretofore entered. Ban-

croft's Practice, p. 2483; H. C. Behrens Lumber Co. v. Lager, 26 S.D. 160, 128 N.W. 698, Ann.Cas.1913A, 1128; Caponigri v. Cooper, 70 App.Div. 124, 74 N.Y.S. 1116; Halter v. Spokane-Soap Works Co., 12 Wash. 662, 42 P. 126."

We adhere to our decision herein reversing the trial court's order and judgment overruling defendants' motion to vacate default judgment upon the condition stated in our opinion announcing such decision but with the further provision that either, any or all of the defendants in the trial court may be relieved of the duty of stipulating that any judgment against them to be hereafter rendered shall operate as a lien upon their real estate, as of and from January 21, 1957, as provided in such opinion reversing, upon his or their depositing with the clerk of the trial court, a cash or surety bond to be approved by the trial court in an amount sufficient to cover the judgment vacated and all costs that are or may be properly chargeable to the defendants; provided, in the event that such bond is not posted by one or more of the defendants, that the judgment lien of the judgment herein vacated so stipulated to by either, any or all of the defendants shall continue in force against the property of such defendant or defendants until superseded by a final decision on the merits of this cause of action.

It is further ordered that such judgment of the trial court be not vacated as to either, any or all of such defendants, if any as shall fail, neglect or refuse within thirty (30) days from the date of spreading of mandate in the trial court to either stipulate as required by the opinion supplemented hereby or deposit bond as provided by this supplemental opinion.

WELCH, JOHNSON, BLACKBIRD and JACKSON, JJ., concur.

DAVISON, C. J., and HALLEY and IRWIN, JJ., dissent.